UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
Maurice SYLLA,

                     Plaintiff,

   -against-

THE CITY OF NEW YORK, THE NEW
YORK CITY DEPARTMENT OF
CORRECTIONS and C.O. DOE, the last
name being fictitious and currently
unknown,

                     Defendant.
---------------------------------------------------x

MEMORANDUM AND ORDER
04-cv-5692 (ILG)

GLASSER, United States District Judge:

## INTRODUCTION

The complaint in this case arises out of an alleged "slip and fall" which took place in a flooded bathroom at Riker's Island Correctional Facility asserts three claims: (1.) violations of civil rights guaranteed by the Federal Constitution under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, (2.) state constitutional claims and (3.) common law negligence.

## JURISDICTION

As an initial matter, subject matter jurisdiction is based on the federal claims pleaded by the plaintiff. 28 U.S.C. § 1331. However, the complaint acknowledges that Riker's Island Correctional Facility is located in the Bronx, and neither alleges action which took place in the Eastern District of New York, nor specifies defendant's connection to the Eastern District. This would suggest that the Southern District of New York might provide a more appropriate venue for this litigation. Nonetheless, in argument, plaintiff's counsel stated that his client lives in Brooklyn. As such, jurisdiction

1

and venue are found to be proper.

## BACKGROUND

The pleaded facts are construed in the light most favorable to plaintiff, as is required on a motion to dismiss. Maurice Sylla ("Sylla" or "plaintiff"), who was incarcerated at the time of the incident, alleges that on or around December 28, 2003, he "slipped and fell in a condemned bathroom, which should have been closed because of flooding." (¶ 19).[1] He alleges that defendant C.O. Doe knew that the bathroom was flooded and that plaintiff might injure himself, but that he instructed him to use it nonetheless. (¶ 26).

Plaintiff asserts that he requested medical attention immediately, but was forced to wait for four weeks before he was treated. (¶ 28). As a result of the incident, plaintiff asserts that he suffered prolonged injuries, including severe spine, back, neck, and cervical collar injuries, as well as psychological trauma, including mental anguish, acute emotional distress, fear, and anxiety. (¶¶ 39, 49). He also alleges that Defendants City of New York ("City") and City of New York Department of Corrections ("Corrections") failed to provide training "that would enable [Defendant Doe] to detect potentially dangerous conditions . . . [and to] follow standard prison procedures/guidelines in a responsible manner." (¶ 46).

## DISCUSSION

Plaintiff claims to state causes of action under Sections 1981, 1983, 1985, and

---

[1] All references designated "¶" are to the Complaint.

1986 of Title 42 of the United States Code, specifying constitutional violations of the Fifth, Eighth, Ninth, and Fourteenth Amendments. Additionally, he alleges common law claims for premises liability and negligent hiring and supervision. The complaint also makes reference to violations of the state constitution, without specificity. Defendants move to dismiss the claim under Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.Proc. 12(b)(6). In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim. See Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir.1997). A court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. See Chosen Intern., Inc. v. Chrisha Creations, 413 F.3d 324, 327 (2d Cir.2005). Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002).

**I. Admissibility of Materials Submitted in Opposition to Defendant's Motion to Dismiss.**

At the outset, the Court considered the materials submitted by plaintiff in opposition to defendant's motion to dismiss. Plaintiff has submitted an affidavit by which he makes additional representations about the alleged events which gave rise to

his claims. Plaintiff's counsel has also submitted an Affirmation in Opposition, in which he refers to a number of case-related details of which he has no direct personal knowledge, and upon which he relies as grounds for arguing that the motion to dismiss should not be granted. This affirmation will be disregarded. See Fed.R.Civ.Proc. 56(e).

When matters outside of the pleadings are presented to a court in response to a motion to dismiss, the court may proceed in one of two ways: It may rule only on the motion to dismiss, limiting itself "to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint," Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir.1999), or, the court may convert the motion to one for summary judgment, under Fed.R.Civ.Proc. 56, in which case "all parties shall be given reasonable opportunity to present all material made pertinent" by the conversion. Fed.R Civ.Proc. 12(b). See also, e.g., Hayden, 180 F.3d 42, 54 (2d Cir.1999). The Court addresses the motion as only a motion to dismiss, and the facts stated above reflect only the facts pleaded in the complaint. The additional materials from plaintiff and plaintiff's counsel have been excluded.

**II. Plaintiff's §1983 Claims against C.O. Doe**

In order to state a claim under 42 U.S.C. § 1983 against C.O. Doe, plaintiff must state facts which warrant an inference that a constitutional right was violated, and indicate that the officer was personally involved in the deprivation that right. See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987). Plaintiff alleges violations of the Fifth, Eighth, Ninth, and Fourteenth Amendments. Because plaintiff has failed to state facts on which an inference might be made that a constitutional right was violated, the § 1983 claim against C.O. Doe must be dismissed.

## A. Fifth Amendment and Ninth Amendment Claims

Plaintiff has alleged a general violation of the Fifth Amendment, presumably those provisions that prohibit the deprivation of life, liberty, or property without due process of law. The Fifth Amendment is applicable only to the federal government. Public Utilities Commission of District of Columbia v. Pollak, 343 U.S. 451, 461 (U.S.1952) Where, as here, defendants are municipal, rather than federal entities and officials, a due process claim under the Fifth Amendment must be dismissed. See Dye v. Virts, 2004 WL 2202638 (W.D.N.Y.2004) (dismissing pre-trial detainee's Fifth Amendment claims against county law enforcement employees).

Plaintiff has also alleged a violation of the Ninth Amendment. The Ninth Amendment, which provides no additional substantive protections not found elsewhere in the law, has been held to be inapplicable in the context of a §1983 suit. See, e.g., Rini v. Zwirn, 886 F.Supp. 270, 289 -290 (E.D.N.Y.1995) (collecting cases). Moreover, it has not been incorporated by the Fourteenth Amendment to non-federal actors. See Id.

## B. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. Wilson v. Seiter, 501 U .S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). This protection includes an inmate's right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994). The analysis of an Eighth Amendment violation encompasses an objective standard, that the deprivation is objectively sufficiently serious such that the plaintiff was denied the

5

minimal civilized measure of life's necessities, and a subjective standard, that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain. See Farmer, 511 U.S. at 834.  As to the objective standard, "to prevail on a claim based on the conditions of his confinement, a prisoner must show extreme deprivations, because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir.2000) (citing Hudson v. McMillan, 503 U.S. 1 at 8 (1992)). See also, Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir.1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.").

In this case, defendant posits two distinct Eighth Amendment violations; first, against the instruction to use the condemned bathroom, and second, against the delay in obtaining medical treatment.

### 1. the flooded bathroom

Defendants challenge whether the alleged "condemned bathroom, which should have been closed because of flooding" can be considered an objectively serious enough risk of harm to support an Eighth Amendment violation.  Courts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners.  See, e.g., Davis v. Reilly, 324 F.Supp.2d 361, 367 (E.D.N.Y.2004) (failure to provide shower mats does not rise to level of constitutional violation); Eley v. Kearney, 2005 WL 1026718 (slip op.) (D.Del.2005) (classifying "accumulated slippery substances" as "indadvertent or negligent" rather than "obdurate and wanton"); Hill v. Central Reception Assignment Facility, 2005 WL 2491517 (slip op.) (D.N.J.,2005) ("water problem" leading to slip and

6

fall cannot satisfy objective risk requirement); Wehrhahn v. Frank, 2004 WL 2110755 (W.D.Wis.2004) (failure to put up a "slippery when wet" sign insufficient grounds for stating Eighth Amendment claim). The instruction to use a bathroom that is wet, or even flooded, does not inherently constitute an excessively serious risk to substantiate an Eighth Amendment violation, which is fact-specific, "contextual and responsive to contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1 (1992). The plaintiff has not pleaded facts from which one could infer that the flooded bathroom posed an excessively serious risk to him; nor does the conclusory statement that C.O. Doe "knew that plaintiff might injure himself" transform a wet floor into anything more than a negligent condition.

Even if the bathroom constituted such an objective risk to him, however, plaintiff must allege facts that, if proved, could give rise to an inference of deliberate indifference on the part of C.O. Doe, who allegedly instructed him to use the flooded bathroom. See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001) (applying deliberate indifference standard in case involving allegations that inmate was exposed to unsanitary conditions and prolonged cold); Blissett v. Coughlin, 66 F.3d 531, 536-37 (2d Cir.1995) (applying deliberate indifference standard in case involving allegations by inmate that he was kept for several days in a dark unsanitary observation cell, without any personal amenities).

The complaint alleges that C.O. Doe acted with "deliberate indifference" to plaintiff's safety "by instructing [him] to use said bathroom knowing full well of the likelihood that [he] might injure himself." (¶ 26). However, in the next paragraph, plaintiff equates deliberate indifference with negligence: "[Defendants] negligently forced [plaintiff] to use a condemned bathroom and negligently failed to restrict access

7

to the condemned bathroom and negligently failed to follow department guidelines . . . Corrections negligently failed to guarantee that Plaintiff Maurice Sylla's safety and wellbeing [sic] would be safeguarded." (¶ 27). Negligence cannot provide the requisite basis on which to sustain an Eighth Amendment violation of deliberate indifference. See Blyden, 186 F.3d at 262 ("This standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to liability.").

While the conclusory legal allegation of "deliberate indifference" is intoned in the complaint, the plaintiff has alleged nothing more than a "slip-and-fall" accident on a wet bathroom floor.[2] Because the slip-and-fall allegations do not meet either the objective or subjective standards defining an Eighth Amendment violation, a Section 1983 claim on this basis cannot survive a motion to dismiss.

### 2. the right to medical treatment

Medical indifference claims comprise a subset of Eighth Amendment prison conditions litigation. The Second Circuit has summarized the law in Morales v. Mackalm:

> To state an Eighth Amendment claim for medical indifference, [claimant] must first allege a sufficiently serious deprivation that is, a condition of urgency, one that may produce death, degeneration, or extreme pain. Next, he must show that the defendant had a sufficiently culpable frame of mind, which is defined as more than negligence, but less than conduct undertaken for the very purpose of causing harm. This state of mind

---

[2] In the affidavit attached to plaintiff's opposition papers, plaintiff stated for the first time that he had made "numerous verbal and written complaints regarding the flooded bathroom," and had "explained that [he] had a severely injured neck and was concerned that [he] might injure [him]self in the bathroom." (Aff. of Maurice Sylla, ¶ ¶ 1, 4). Plaintiff's "Affirmation in Opposition" suggests that the scienter is demonstrated by the defendants' order to use the condemned bathroom, and the subsequent failure to allow him to immediately see a doctor. Without deciding whether or not those assertions allege "deliberate indifference," the facts are not pleaded and are not considered.

8

> requires that the prison employee know facts from which the inference
> could be drawn that a substantial risk of serious harm exists, and that he,
> in fact, draw that inference. The serious medical deprivation and state of
> mind tests apply both to delayed or denied access claims and to
> inadequate medical care claims.

278 F.3d 126, 132 (2d Cir.2002) (internal citations omitted).

Plaintiff alleges only that he "requested medical care immediately but was forced to wait until four weeks before receiving medical care." (¶ 28). This allegation does not support either an inference that "the failure to treat [his] condition could [have resulted] in further significant injury or the unnecessary and wanton infliction of pain," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998), or "that prison officials intentionally denied or delayed access to medical care." Pappanikolaou v. New York City, 2005 WL 1661649 (E.D.N.Y.2005).[3] As to the former, plaintiff has not pleaded any facts to suggest "a condition of urgency" existed requiring immediate attention from a doctor. Morales, 278 F.3d 126, 132 (2d Cir.2002). In fact, he has not pleaded any facts at all about his injuries resulting from the slip and fall; there is simply no basis on which the Court can infer an objectively serious medical condition. Compare Hylton v. Federal Bureau of Prisons, 2002 WL 720605 (E.D.N.Y.2002) (delay in repair of cracked tooth resulting from slip and fall in shower insufficiently serious condition) with Johnson v. Wright, 234 F.Supp.2d 352, 360 (S.D.N.Y.2002) (inadequate treatment of Hepatitis C sufficiently serious condition). As to the latter, plaintiff has not alleged that any individual officer "actually wish[ed] him harm, or at least, was totally unconcerned with his welfare." Hathaway, 37 F.3d at 69. He has only alleged that he was forced to wait for

---

[3] Again, in the supplementary affidavit, plaintiff alleges that after the accident he "put in notes for sick call" for two weeks before receiving medical attention, and that once he received attention, he "complained about the pain in the neck and head." The Court has excluded this material.

four weeks to see a doctor, an allegation which falls far short of the allegations required by Hathaway and Morales, supra .

Because plaintiff has fulfilled neither the objective nor subjective requirements of an Eighth Amendment claim with respect to the alleged delay in receiving medical treatment, the § 1983 claims based on an Eighth Amendment violation of medical indifference must be dismissed.

### C. Fourteenth Amendment Claims

Plaintiff alleges a violation of the Fourteenth Amendment based on the claim that the actions of the officials unlawfully deprived him of his liberty interest in freedom from bodily injury.

To the extent that the claim is predicated upon the negligent acts of prison officials, application of the Due Process Clause has been squarely rejected by the Supreme Court. See Daniels v. Williams, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)).

While it is true that deliberate indifference by prison officials may implicate the Fourteenth Amendment in some circumstances, see, e.g., Snider v. Dylag, 188 F.3d 51, 54 (2d Cir.1999) (officer allegedly declared "open season" on an inmate, resulting in his assault by other prisoners), the Court is cautioned against the automatic creation of due-process deliberate indifference claims. See County of Sacramento v. Lewis, 523 U.S. 833, 849-851 (1998). That teaching is particularly applicable here, and the claim will be dismissed.

### III. Plaintiff's Claims for § 1983 Municipal Liability

To hold this municipality liable here, plaintiff must plead and prove three elements: " (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995). Because plaintiff has failed to state a claim of a constitutional violation which can survive a motion to dismiss, the allegation of municipal liability must fail.

However, even if he could state a constitutional violation on the basis of C.O. Doe's conduct, in order to state a claim for municipal liability under §1983, plaintiff must allege that "through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged." Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). See also, City of Canton v. Harris, 489 U.S. 378, 389 (1989); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). This requirement is designed "to distinguish acts of the municipality from acts of its employees, in order that municipal liability be limited to conduct for which the municipality is actually responsible." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir.1999). The rule of respondeat superior does not effect municipalities in this context. See Coon v. Town of Springfield, Vt., 404 F.3d 683, 687 (2d Cir.2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 693 (1978)). Finally, where plaintiff alleges that liability is based on a claim of failure to train or supervise, the plaintiff must allege that "the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." City of Canton, 489 U.S. 388.

The complaint does not identify any policy or custom of the Department of Corrections or the City of New York which might have been the moving force behind

11

plaintiff's injuries; to the contrary, the complaint alleges that C.O. Doe's instruction to plaintiff to use the bathroom was a violation by law of policies of the municipality and its agency. (¶ 46). In this case, the only possible predicate for municipal liability is that the failure to train the officer "launch[ed] a series of events that ultimately caused a violation of federal rights." Bryan County, supra, 520 U.S. at 405. Such a theory is subject to "rigorous standards of culpability and causation" to ensure that the municipality is not held responsible for the isolated act of an employee. Id. See also City of Canton, 489 U.S. at 391-392.

The simple assertion of a failure to train does not warrant an inference that the municipality caused the individual act of an employee. Because an individual officer's violation of federal rights "may have resulted from factors other than a faulty training program," City of Canton, 489 U.S. at 390-91, plaintiff must not only allege a failure to train, but that there exists "a deliberate City policy of failing to train its police officers in how to interact with [particular] individuals." Anthony v. City of New York, 339 F.3d 129, 140 (2d Cir.2003). No such allegation exists here. Plaintiff has not alleged any specific deficiencies in a training program, nor a pattern of conduct by employees which would place the municipality on notice that it needed to alter its training regime. See City of Canton, 489 U.S. at 390-391. In the absence of any specific allegations, plaintiff has not pleaded facts on which the Court can infer that the municipality bears any culpability for the officers acts, or that the training program in any way caused plaintiff's injuries.

Having failed to allege a constitutionally infirm "policy or custom" of the municipality, a basis on which to infer that the municipality caused any injury to him, or

a constitutional violation which can withstand a motion to dismiss, plaintiff's efforts to establish municipal liability must also be dismissed.

### IV.     Other Claims

Plaintiff has also offered claims under 42 U.S.C. § 1981 for equal rights under the law, 42 U.S.C. § 1985 for conspiracy to interfere with constitutional rights; 42 U.S.C. § 1986 for failing to prevent interference with constitutional rights; and 42 U.S.C. § 1988 for attorneys fees.  He has also advanced common law claims and state constitutional concerns.

#### 1. § 1981 claim

42 U.S.C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The purpose of this statute is to prevent racial discrimination in the formation of contracts and "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace." 42 U.S.C.A. § 1981.  Plaintiff has alleged neither a contractual dispute, nor any workplace discrimination.  At oral argument, the Court inquired with plaintiff's counsel as to the good faith basis for a claim on the basis of § 1981, and counsel could not provide one. There simply is no basis for this claim, and it must be dismissed.

#### 2. § 1985 claim

Section 1985 prohibits conspiracy to interfere with civil rights. "In order to

maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir.2003) (quoting Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). The Second Circuit has held that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). See also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.1983). Plaintiff has failed to allege a conspiracy or supply facts supporting an inference that there was any agreement between any of the defendants to violate his constitutional rights. This claim must be dismissed.

### 3. § 1986 claim

42 U.S.C. § 1986 creates a cause of action for neglecting to prevent an actionable conspiracy under § 1985. 42 U.S.C. § 1986. A section 1986 claim must be predicated on a viable section 1985 claim. See Koch v. Mirza, 869 F.Supp. 1031 (W.D.N.Y.1994) (citing Hahn v. Sargent, 523 F.2d 461, 469-70 (1st Cir.1975), cert. denied, 425 U.S. 904 (1976)). Where plaintiff fails to state a viable § 1985 claim, he cannot state a claim under § 1986.

### 4. § 1988 claim

Finally, plaintiff seeks attorneys fees pursuant to 42. U.S.C. § 1988. However, 42 U.S.C. § 1988 does not provide a cause of action, but is predicated upon "an action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986." 42 U.S.C. § 1988(b).

### 5. state law claims

As for the claims based on state constitutional violations and common law negligence, those claims must be brought in the state court. Even if this Court wanted to exercise supplemental jurisdiction over those claims, having dismissed all federal claims under Rule 12(b)(6), the Court must dismiss the state law claims as well. See <u>Castellano v. Bd. of Trustees</u>, 937 F.2d 752, 758 (2d Cir.1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

### **CONCLUSION**

The court concludes that plaintiff has failed to state allegations on the basis of which a constitutional violation could be inferred. Defendant's motion to dismiss is therefore granted. The Clerk of the Court is directed to close the case.

Dated:	Brooklyn, New York
	December 8, 2005.

SO ORDERED.

_____/s/_____
I. Leo Glasser
United States District Judge

Copies of the foregoing memorandum and order were sent to:

<u>Counsel for the Plaintiff</u>

Gary Newlin Rawlins
The Law Offices of Gary N. Rawlins
310 Livingston Street
Third Floor
Brooklyn, NY 11217

<u>Counsel for the Defendant</u>

Kimberly Conway
New York City Law Department
100 Church Street
New York, NY 10007